UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:05CV111-EHJ

MARY SMITH o/b/o PHILLIP ORBERSON                                    PLAINTIFF

v.

JO ANNE BARNHART,
Commissioner of Social Security                                      DEFENDANT

## MEMORANDUM OPINION

This case presents Mary Smith's challenge to the Commissioner's decision denying minor Phillip Orberson's claim for childhood supplemental security income (SSI) benefits. After thorough examination of the materials of record, the arguments of the parties and applicable authorities, the Court determines that the decision of the Commissioner should be affirmed.

This case is somewhat complicated because the applicable legal standards changed approximately three times during plaintiff's case. To clearly understand the issues, it is necessary to separately discuss these changes. Plaintiff was originally awarded childhood supplemental security income benefits beginning January 1, 1995. Subsequently, the criteria for eligibility changed, and in April 1999, ALJ Lawrence Shearer found that plaintiff was no longer entitled to benefits. On appeal to the United States District Court, the Commissioner requested that the action be remanded for further proceedings. On remand, a new hearing was conducted and the final decision of the Commissioner was rendered on February 9, 2004 by Administrative Law Judge John Lawrence. In support of his decision denying childhood supplemental security income (SSI) benefits pursuant to Title XVI of the Social Security Act, the ALJ made the following findings:

1.      The child was born on December 23, 1988 and he is enrolled in eighth grade.

2.      The child has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. §416.924(b)).

3.      The child has a "severe" impairment (20 C.F.R. §416.924c)).

4.      The child's borderline intellectual functioning, and oppositional defiant disorder versus attention deficit hyperactivity disorder, do not meet or medically equal the severity of any impairment listed in Part B of Appendix 1 to Subpart P, (20 C.F.R. §§416.924(d)(1), 416.925 and 416.926).

5.      The child does not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the listings (20 C.F.R. §§416.924(d)(2) and 416.926a).

6.      The child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision.

7.      The child has not been under a "disability," at any time from the alleged onset date through the date of this decision (20 C.F.R. §416.906).


## STANDARDS GOVERNING CHILDHOOD SSI CLAIMS

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), amended the Social Security Act to define "disabled," with respect to children, to require that:

(i) an individual under the age of 18 . . . be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

>(ii) Notwithstanding clause (I), no individual under the age of 18 who engages in substantial gainful activity . . . may be considered disabled.  PRWORA, Pub. L. No. 104-193, 110 Stat. 2105 (Aug. 22, 1996), codified at 42 U.S.C.A. §1382c(a)(3)(C).

Congress directed the Commissioner to promulgate regulations implementing these amendments, 42 U.S.C.A. §1382.  In response, in February of 1997, the Commissioner promulgated interim final rules.  Prior to the Act, a child could be found disabled if he or she suffered from an impairment "of comparable severity" to one that would disable an adult.

On September 11, 2000, the Administration promulgated final rules (65 Fed. Reg. 54, 746 et seq.) as set forth in the present version of the regulations, that replaced the interim rules.  The final rules became effective on January 2, 2001.  The final rules indicate that "with respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that court's review of the Commissioner's final decision would be in accordance with the rules in effect at the time of the final decision."  65 Fed. Reg. At page 54751.  Because ALJ Lawrence issued the Commissioner's final decision herein on February 9, 2004, after the effective date of the final rules, the final rules govern this judicial review.

The rules implementing the Act establish a three-step sequential evaluation process.  20 C.F.R. §§ 416.924(b)-(d).  First, the child must not be engaged in substantial gainful activity.  Second, the impairment or combination of impairments must be severe.  Third, the impairment must meet, medically equal, or functionally equal the criteria of an impairment in the Listing of Impairments at Appendix 1, Subpart P, Regulations No. 4.

The final rules consolidated the four alternative methods of establishing functional equivalence recognized by the interim rules.  Under the rules applicable herein, an impairment or combination of impairments will be deemed the functional equivalent of a listed impairment if it

sufficiently adversely impacts upon one or more of six broad areas of development and functioning, the ability of the child: 1) to acquire and use information; 2) to attend and complete tasks; 3) to interact and relate with others; 4) to move about and manipulate objects; 5) to care for himself; and 6) the child's health and physical well-being.  20 C.F.R. §416.926a(b)(1).

A finding of functional equivalence is required if it is found that the impairment causes an "extreme" limitation in one area or a "marked" limitation in two or more areas, §416.926a(a).  A "marked" limitation is one that:

> . . . interferes seriously with your ability to independently initiate, sustain, or complete activities . . . . [It] also means a limitation that is more than moderate but less than extreme.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. §416.926a(e)(2)(i).

An "extreme" limitation is one that:

> . . . interferes very seriously with your ability to independently initiate, sustain, or complete activities . . . . "Extreme limitation" also means a limitation that is more than marked.  "Extreme limitation" is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. §416.926a(e)(3)(I).

<u>DISCUSSION</u>

Plaintiff was found disabled from January 1, 1995 due to mental retardation.  During the years that followed, there were numerous changes in the standards governing evaluation of childhood SSI claims, including an initial change, an interim standard, and then final rules.  After a sentence four remand from the United States District Court, a new hearing was held by ALJ Lawrence and his decision dated February 9, 2004 became the final decision of the Commissioner. The Appeals Council declined to review the decision, and appeal to this Court followed.

Plaintiff takes issue with the ALJ's Finding #5, arguing that plaintiff does in fact have marked limitations in two domains of functioning that would be the functional equivalent in severity to a listed impairment.  Plaintiff argues that the ALJ found a marked impairment in the plaintiff's ability to attend and complete tasks, but found no other evidence of marked impairments in any of the five domains.  Accordingly, plaintiff's argument is that the ALJ should have found "marked" impairments in the acquiring and using information domain as well.  Under the regulations, a finding of marked limitations in both of these domains would dictate a finding of disability.

To qualify for childhood SSI benefits, the plaintiff must establish that he suffers from a medically determinable physical or mental impairment, resulting in marked and severe functional limitations, 42 U.S.C. §1382c(a)(3)(C)(I).  The burden of proof on the matter is upon the plaintiff, see for example <u>Tate ex rel. Tate v. Commissioner</u>, 368 F.Supp.2d 661 (E.D. Mich., 2005).  Thus the primary issue in this case is whether the evidence in the administrative record adequately demonstrates that the plaintiff carried his burden of proof that his medical condition functionally equals the Listing.  Stated somewhat differently, the issue is whether the ALJ's answering of this question in the negative is supported by substantial evidence.  The plaintiff must show that he suffers from an "extreme" limitation and/or two "marked" limitations in the following functional domains:

1)    Acquiring and using information;

2)    Attending and completing tasks;

3)    Interacting with and relating to others;

4)    Moving about and manipulating objects;

5)    Caring for one's self;

6)    Physical well-being.

5

Like all issues involving a Listing, the issue is a medical question, <u>Tate ex rel. Tate</u>, supra. Hence, the relevant evidence of record is from the medical/psychological sources. Neither the plaintiff nor this Court is qualified to interpret raw psychological data in functional terms. Therefore, the pertinent evidence in this case is the assignment of specific limitations by the psychological experts that correspond to the six functional domains noted above. Additionally, this Court's consideration of the evidence is limited to that evidence that is not legally stale, i.e., was not more than three years old at the time of the administrative hearing on November 14, 2003.

This Court has reviewed the arguments of both parties, and agrees with plaintiff's contention that the ALJ did make a finding of at least one "marked" limitation of functioning in the "attending and completing tasks" domain. This finding is made at Tr. 344, last paragraph under the heading Attending and Completing Tasks. Plaintiff has taken the approach on appeal that the ALJ erred in failing to find a "marked" limitation in the "acquiring and using information" domain, as a finding of "marked" limitations within both functional domains would result in a functional equivalent of a listed impairment mandating a finding of disability.

Plaintiff contends that IQ testing from 1997 to 2002 show a decline in test scores from a full scale score of 78 in 1997, to a full scale score of 68 in 2002. He argues that the ALJ improperly discounted the decline in IQ score. Our review of the decision reveals that the ALJ properly questioned the validity of the lower test score based upon its conflict with previous higher scores and upon the report that plaintiff had difficulty staying on task during the testing. Plaintiff also contends that the ALJ erred in not discussing any school records prior to 2001. However, as noted above, the ALJ was bound to consider only evidence that is not legally stale, i.e. evidence that was not more than three years old at the time of the administrative hearing on November 14, 2003.

6

The Regulations further explain, however, that no one piece of evidence will be dispositive to the inquiry: No single piece of information taken in isolation can establish whether you have a "marked" or an "extreme" limitation in a domain.  We will consider your test scores together with the other information we have about your functioning, including reports of classroom performance and the observation of school personnel and others.  20 C.F.R. § 416.926a(e)(4)(i-ii).  In addition to discussing the clinical findings and IQ scores of record, the ALJ noted that:

> . . . evidence shows that he has worked the entire summer.  He painted and did roofing and siding work.  He can use saws and drills.  He works on cars.  He can take out a motor and starter.  He can change oil.  He hunts with his grandfather.  He has shot a deer.  (Tr. 343)

In addition, the ALJ evaluated each functional domain in light of the evidence of record, and found that the plaintiff has less than "marked" limitations in acquiring and using information, even though he is below his peers in academic skills and continues to be in special education with weaknesses in basic reading and math.  In support, the ALJ notes that plaintiff has consistently been advancing to the next grade.  While there appear to be test results in the school records that show difficulties in certain areas (with several scores at or near two standard deviations below the norm), the ALJ did discuss the educational records in his decision and found the IQ and other scores to be inconsistent with the activities reported by plaintiff and his mother.

<u>CONCLUSION</u>

In sum, the ALJ's decision is supported by substantial evidence and comports with applicable law.  The plaintiff has simply failed to carry his burden of proof that his condition functionally equals the Listing.  A judgment in conformity has this day entered.

7